## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

DR. DANIEL BRANDWEIN, DPM

      Plaintiff,                         Case No.: 26-cv-60084

v.

ROBERT F. KENNEDY, JR., in his
official capacity as Secretary of Health
and Human Services,

      Defendant.

_____/

## COMPLAINT

Plaintiff Dr. Daniel Brandwein, DPM, owner of Dr. Daniel Brandwein, P.A., by and through undersigned counsel, hereby sues Defendant Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services and states as follows:

## NATURE OF THE ACTION

1. This is an action for judicial review of four final decisions by the Secretary of the United States Department of Health and Human Services, Robert Kennedy, acting in his official capacity through the Medicare Appeals Council:

    a. MAC Docket Number M-25-1932 (J.F.)[1] (ALJ Appeal Number 3-14443431635), notice of non-action and accompanying acceptance attached as Exhibit A. The amount in controversy of this claim is $175,429 not including interest and other costs.

---

[1] The patients' initials are used to maintain privacy while identifying the claims.



b. MAC Docket Number M-25-2363 (S.T.) (ALJ Appeal Number 3-14477192076), notice of non-action and accompanying acceptance attached as Exhibit B. The amount in controversy of this claim is $2,794,992 not including interest and other costs.

c. MAC Docket Number M-25-2478 (A.J.) (ALJ Appeal Number 3-14470343406), notice of non-action and accompanying acceptance attached as Exhibit C. The amount in controversy of this claim is $860,344 not including interest and other costs.

2. The Office of Medicare and Health Administrations' improperly denied reimbursement for reasonably and medically necessary services provided by him to his patients, Medicare beneficiaries, based exclusively on an alleged evidentiary requirement that is not in the applicable statutes, regulations, or guidance.

3. The MAC failed to timely act on Dr. Brandwein's requests for reconsideration.

4. Plaintiff Dr. Daniel Brandwein is a Board-Certified podiatrist enrolled in the Medicare program who provides wound care services to Medicare beneficiaries where medically appropriate, including to patients who suffer from diabetes and its malicious co-morbidity diabetic foot ulcers ("DFUs") and venous leg ulcers ("VLUs"). DFUs are open sores on the feet common in people with diabetes due to nerve damage (neuropathy) and poor circulation, often leading to serious infections and potential amputation if untreated. VLUs are sores that are very slow to heal, usually due to impaired blood circulation in the veins of the leg. Both DFUs and VLUs are difficult to treat and heal through conventional wound treatment methods. In addition to

increased amputation risks for patients when not properly treated, they negatively impact the patients' quality of life due to pain, odor, decreased mobility, and social isolation. Fortunately, wound care experts like Dr. Brandwein can treat these and other similar chronic wounds with human tissue product derived from donated amniotic tissue, i.e., a skin substitute product.

## PARTIES

5.  At all material times, Plaintiff Daniel Brandwein, DPM is a board-certified podiatrist practicing in Pompano Beach, FL.

6.  Dr. Brandwein is a licensed physician in the State of Florida, practicing in and around Broward County, FL, with a primary practice location at 159 S. Pompano Parkway Pompano Beach, FL 33069.

7.  At all material times hereto, Secretary Robert Kennedy was the Secretary of HHS, in which capacity he is responsible for the conduct and policies of HHS, including the Centers for Medicare and Medicaid Services ("CMS") and its contractors, and for administering the Medicare program. Secretary Kennedy is named in his official capacity only.

8.  HHS, under Secretary Kennedy's direction, administers the Medicare and Medicaid programs established under titles XVIII and XIX of the Social Security Act.

9.  CMS is the federal agency to which the Secretary has delegated administrative authority over the Medicare and Medicaid programs. References to the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1395ff(b), and 5 U.S.C. § 702.

11. The total amount in controversy is greater than $3,830,765 and exceeds the jurisdictional requirement in 42 U.S.C. §§ 1395ff(b)(1)(E)(i), and 42 C.F.R. §§ 405.1136(a)(1) and 405.1006(c).

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e), 42 U.S.C. § 405(g) and 42 C.F.R. § 405.1136(b)(1).

13. This action is timely given the MAC's failure to render a decision within the applicable time periods specified by 42 C.F.R. § 405.1116, and no reasonable justification or extension notice has been provided or the MAC waived jurisdiction due to its failure to timely render a decision.

14. Dr. Brandwein has fully exhausted all 42 U.S.C. § 1395 ff and 42 C.F.R. § 405 Subpart I. He therefore brings this lawsuit to seek relief for the denied charges that are in excess of $3,830,765.

## GENERAL ALLEGATIONS

## THE MEDICARE PROGRAM

15. The Medicare Act establishes a federal government program that provides health care coverage to the aged and disabled. Title 42, Chapter 7, Subchapter XVIII, U.S. Code. Medicare includes Parts A through D. This action arises solely under Part B, which concerns covering basic non-hospital medical needs.

16. Medicare is the federal health insurance program for the elderly and disabled. The Secretary is responsible for administering the Medicare program and does so by

delegating implementation and oversight to CMS. The Medicare statute divides the benefits available under the program into separate parts.  Medicare Part B, which is relevant to the claims in this civil action, covers physician services that are not provided in an inpatient setting. Physician services include items, supplies, and physician-administered drugs that are provided as part of a physician office visit or procedure.

17. Skin substitute products provided in conjunction with a physician's treatment of chronic wounds have been covered for many years under Medicare Part B.

18. The Medicare statute authorizes the Secretary to enter into agreements with MACs to administer some of the day-to-day functions of the Medicare program. Absent a national or local coverage determination, the MACs' responsibilities include making initial determinations on a case-by-case basis as to whether to pay for services provided to Medicare beneficiaries—i.e., whether to "cover" those services— when claims are submitted for reimbursement.

19. Medical providers submit their claims for reimbursement to a Medicare administrative contractor, a private entity that processes claims in a geographic region assigned by HHS, and the Medicare administrative contractor makes an initial determination as to whether an item or service qualifies for reimbursement in that geographic region. 42 C.F.R. § 405.920; *see also* 42 U.S.C. § 1395kk-1(a)(4)(A).

20. Dictated by the Medicare statute, the MACs approve payment for items and services that are "reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A). CMS has interpreted this "reasonable and

necessary" standard to mean the item or service is medically appropriate (including its duration and frequency), safe and effective, and not experimental or investigational. See, e.g., Medicare Program Integrity Manual ("MPIM") § 13.5.4 (last revised Feb. 12, 2019)[2]; see also MPIM § 3.6.2.2 (last revised Aug. 9, 2024)[3].

21. For the MAC to consider coverage and payment for any item or service, the information submitted by the provider must corroborate the documentation in the beneficiary's medical record and confirm that Medicare coverage criteria have been met. MPIM § 3.3.2.1.

22. In an attempt to provide consistency and uniformity in determinations regarding coverage, Congress has established a process for creating Local Coverage Determinations ("LCDs") and National Coverage Determinations ("NCDs"), where the latter provides a nationwide determination regarding coverage of a particular item or service and the former provides such a determination within a single Medicare jurisdiction. 42 U.S.C. § 1395y(l).

23. The development of both NCDs and LCDs involves a congressionally mandated process involving opportunity for notice and comment. *Id.*; see also MPIM, Chapter 13.

24. Items or services covered under an LCD are properly reimbursed by CMS.

---

[2] https://tinyurl.com/55d6mkp7
[3] https://tinyurl.com/yxtnf78e



25. Items or services that are not governed by any NCD or LCD may still be covered on a case-by-case basis if the item or the service is determined to be reasonable and medically necessary because it satisfies the following criteria:

> It is safe and effective:
> It is not experimental or investigational; and
> It is appropriate, including the duration and frequency in terms of whether the service or item is:
>> Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
>> Furnished in a setting appropriate to the beneficiary's medical needs and condition;
>> Ordered and furnished by qualified personnel; and,
>> eets, but does not exceed, the beneficiary's medical need.

MPIM, Chapter 3.6.2.2.

## THE APPEALS PROCESS

26. A provider that is dissatisfied with the initial determination can file an administrative appeal. 42 C.F.R. § 405.904.

27. The administrative appeals process consists of up to four steps: (1) a redetermination by the Medicare administrative contractor that originally denied the claim; (2) a review by a different contractor, a Qualified Independent Contractor ("QIC"); (3) a hearing before an Administrative Law Judge ("ALJ"); and, (4) review by the MAC, an adjudicatory body within HHS. 42 C.F.R. § 405.904.

28. A provider that exhausts its administrative appeals can seek judicial review in a federal district court. 42 U.S.C. §§ 405(g), 1395ff(b)(1)(A).

29. A redetermination is the first level of appeal after the initial determination. In conducting a redetermination, the MAC reviews the evidence and findings upon

which the initial determination was based, as well as any additional evidence the parties submit or the MAC obtains on its own. 42 C.F.R. § 405.948.

30. Providers who disagree with the MAC's redetermination decision may request a reconsideration by a Qualified Independent Contractor ("QIC"). A reconsideration should consist of an independent, on-the-record review of an initial determination. In conducting a reconsideration, the QIC reviews the evidence and findings upon which the initial determination, including the redetermination, was based, and any additional evidence the parties submit or that the QIC obtains on its own. If the initial determination involves a finding on whether an item or service is reasonable and necessary for the diagnosis or treatment of illness or injury, a QIC's reconsideration must involve consideration by a panel of physicians or other appropriate health care professionals, and be based on clinical experience, the patient's medical records, and medical, technical, and scientific evidence of record to the extent applicable. See 42 C.F.R. § 405.968(a)(1).

31. Providers who disagree with the QIC's reconsideration decision may then request a hearing with the OMHA, typically with an ALJ.

32. Providers who are dissatisfied with the ALJ's decision may appeal the ALJ's decision to the MAC. 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. §§ 405.1100(a), 405.1102(a)(1). The Council may also review the ALJ's decision on its own motion. 42 C.F.R. § 405.1100.

33. The MAC is supposed to render a decision within 90 days of receipt of the appellant's request for review, unless the 90 calendar day period is extended. 42 C.F.R. § 1100(c).

34. A provider may file an action in a Federal district court within sixty calendar days after the date it receives notice of an adverse MAC decision. 42 C.F.R. § 405.1136; see also 42 U.S.C. §§ 405(g), 1395ff(b).

35. Alternatively, if the MAC does not issue a decision or dismissal or remand the case to an ALJ or attorney adjudicator within the adjudication period specified in § 405.1100, or as extended as provided in this subpart, the appellant may request that the appeal, other than an appeal of an ALJ or attorney adjudicator dismissal, be escalated to Federal district court. 42 CFR 405.1132.

36. The MAC did not issue any decisions on appeal within 90 days and Dr. Brandwein served notices of escalation in all four cases.

## FACTUAL AND PROCEDURAL BACKGROUND

37. Dr. Brandwein provides podiatric service to patients in Pompano Beach, FL, including Medicare patients.

38. Between July 2022 and October 2023 Dr. Brandwein provided wound care services to, among other, three Medicare beneficiaries: A.J. from July 2022 through November 2023; J.F. May 2023 through October 2023; and S.T. August 2023 through October 2023.

39. These three patients—with diabetes, peripheral neuropathy, and venous instability—were at-risk for limb loss associated with chronic, non-healing wounds.

40. Only after attempting other conservative care, which failed, Dr. Brandwein treated the four patients with skin substitute products: Impax Dual Layer Membrane (J.F., S.T.) and Zenith (A.J.).

41. Impax is billed under Healthcare Common Procedure Coding Systems ("HCPCS") code Q4262. Application of Impax is billed under Current Procedural Terminology ("CPT") codes 15271 (application of skin substitute up to 25 cm²) and 15272 (application of additional 25 cm²).

42. Zenith is billed under HCPCS code Q4253. Application of Zenith is billed under CPT codes 15275 (application of skin substitute).

43. LCD 36377 was in effect at all material times and provides for coverage for treatment of DFUs and VLUs using skin grafts.[4]

44. The plain language requirement of the LCD is that DFU skin substitute grafts will be covered when there is presence of a DFU(s) that failed to respond to conservative treatment for greater than four weeks.

45. The LCD requires appropriate documentation of this condition and includes a list of potential, but not all inclusive, conservative treatment measures including comprehensive patient assessment and an implemented treatment plan: history and management of comorbidities, review of current blood sugars, diet and nutritional

---

[4] At the time these cases appeared before the ALJ the future LCD was set to be effective as of February 11, 2025. Due to significant concerns with its applicability and inconsistent application, this was pushed back and the LCD was not to be effective no earlier than April 12, 2025. The future effective date continued to be pused back, eventually being set for November 30, 2025 and then withdrawn with no effective date. https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=36377&ver=19&, accessed December 17, 2025.

 BLACK LAW P.A.

status, activity level, physical exam, inspection of prosthetics or shoes for signs of normal wear.

46. The effective version of the LCD did not limit, include, specify, or exclude different brands of skin graft substitutes, but a future version of the LCD did list which skin graft substitutes would be covered in the future. This LCD is stil not effective and has been withdrawn.

47. Further, the effective version of LCD 36377 does not require peer-reviewed evidence-based literature and instead only requires appropriate documentation of failed conservative treatment versus the future effective LCD which alluded to requirements of peer-reviewed evidence-based literature.

48. LCD 36377 did not require specific mention of any type of product, nor did it require clinical literature. The LCD even acknowledged a general lack of clinical literature but specified that coverage was appropriate when the skin replacement surgery code meets the requirements of the LCD.

49. Dr. Brandwein treated each patient conservatively and followed all CMS and HHS guidelines in the application and treatment of each patient with the respective skin grafts.

50. Dr. Brandwein billed CMS for those products and the associated Current Procedural Terminology ("CPT") code, 15275 (application of skin substitute grafts), for their application.

51. The claims were initially paid by CMS.

52. Some of the patients received coverage for some of the treatment on some dates but not on others.

53. After providing coverage and payment for these services, HHS through its agents notified Dr. Brandwein that it had purportedly identified overpayments under the CMS program.

54. On or about May 1-10, 2024, First Coast Service Options, Inc., the Medicare administrative contractor that originally denied the claim ("UPIC") notified Dr. Brandwein of the alleged overpayment for patient JF. On or about May 20-28, 2024, Dr. Brandwein requested reconsideration from the UPIC for these claims. On or about July 10-12, 2024, the UPIC denied reconsideration and upheld the determination of overpayment. On or about August 28, 2024, Dr. Brandwein requested QIC review of these claims. The appeal was submitted to C2C Innovative Solutions who also denied relief on or about October 4, 2024. Dr. Brandwein appeal these unfavorable decisions to OMHA on or about November 11, 2024. On February 13, 2025, S. Andrew Grace denied Dr. Brandwein's request for relief. On April 7, 2025, Dr. Brandwein appealed the ALJ decision to MAC. To date MAC has not rendered a decision in this matter. On October 28, 2025, Dr. Brandwein notified MAC that it had failed to act within 90 days of receipt of his request for reconsideration. On or about November 17, 2025, MAC issued its Order Granting Dr. Brandwein's Request for Escalation.

55. On or about May 8, 2024, First Coast Service Options, Inc., the Medicare administrative contractor that originally denied the claim ("UPIC") notified Dr.

Brandwein of the alleged overpayment for patient ST. On or about May 28, 2024, Dr. Brandwein requested reconsideration from the UPIC for these claims. On or about July 12, 2024, the UPIC denied reconsideration and upheld the determination of overpayment. On or about August 28, 2024, Dr. Brandwein requested QIC review of these claims. The appeal was submitted to C2C Innovative Solutions who also denied relief on or about November 21, 2024. Dr. Brandwein appeal these unfavorable decisions to OMHA on or about December 9, 2024. On March 10, 2025, Robert Preston denied Dr. Brandwein's request for relief. On May 14, 2025, Dr. Brandwein appealed the ALJ decision to MAC. To date MAC has not rendered a decision in this matter. On October 28, 2025, Dr. Brandwein notified MAC that it had failed to act within 90 days of receipt of his request for reconsideration. On or about November 14, 2025, MAC issued its Order Granting Dr. Brandwein's Request for Escalation.

56. On or about May 8, 2024, First Coast Service Options, Inc., the Medicare administrative contractor that originally denied the claim ("UPIC") notified Dr. Brandwein of the alleged overpayment for patient AJ. On or about May 28, 2024, Dr. Brandwein requested reconsideration from the UPIC for these claims. On or about July 10, 2024, the UPIC denied reconsideration and upheld the determination of overpayment. On or about September 5, 2024, Dr. Brandwein requested QIC review of these claims. The appeal was submitted to C2C Innovative Solutions who also denied relief on or about November 21, 2024. Dr. Brandwein appeal these unfavorable decisions to OMHA on or about December 16, 2024. On March 17, 2025, Kyle Alexander denied Dr. Brandwein's request for relief. On May 21, 2025, Dr. Brandwein

appealed the ALJ decision to MAC. To date MAC has not rendered a decision in this matter. On October 28, 2025, Dr. Brandwein notified MAC that it had failed to act within 90 days of receipt of his request for reconsideration. On or about November 17, 2025, MAC issued its Order Granting Dr. Brandwein's Request for Escalation.

57. On or about May 8, 2024, First Coast Service Options, Inc., the Medicare administrative contractor that originally denied the claim ("UPIC") notified Dr. Brandwein of the alleged overpayment for patient AJ. On or about May 28, 2024, Dr. Brandwein requested reconsideration from the UPIC for these claims. On or about July 10, 2024, the UPIC denied reconsideration and upheld the determination of overpayment. On or about September 5, 2024, Dr. Brandwein requested QIC review of these claims. The appeal was submitted to C2C Innovative Solutions who also denied relief on or about November 21, 2024. Dr. Brandwein appeal these unfavorable decisions to OMHA on or about December 16, 2024. On March 17, 2025, Kyle Alexander denied Dr. Brandwein's request for relief. On May 21, 2025, Dr. Brandwein appealed the ALJ decision to MAC. To date MAC has not rendered a decision in this matter. On October 28, 2025, Dr. Brandwein notified MAC that it had failed to act within 90 days of receipt of his request for reconsideration. On or about November 17, 2025, MAC issued its Order Granting Dr. Brandwein's Request for Escalation.

58. The reasons stated for denial varied from the initial reasons for alleged overpayment, changed throughout the course of the appeals, and are not in accordance with law.

59. In support of each of his appeals, Dr. Brandwein supported his treatment with his own competent testimony, that of his retained podiatry expert Thomas Merrill, DPM., a quadruple board certified practicioner as a Diplomat by the American Board of Podiatric Orthopedics, the American Board of Podiatric Surgery, the American Board of Primary Podiatric Medicine, and the American Board of Disability Analysts.

60. Dr. Merrill is a highly qualified podiatric physician with extensive experience providing and teaching wound care for chronic, non-healing wounds in at-risk patients. He opined that Dr. Brandwein's use of the skin substitute products was reasonable and medically necessary, consistent with the standard of care, done only after prior conservative care failed, necessary to mitigate the serious risk of limb-loss in at-risk patients, and that the products were used properly.

61. Further, Dr. Brandwein presented expert testimony on appropriate billing and coding by his retained experts from Acevedo Consulting. Ms. Acevedo is a certified professional coder specializing in podiatric care and coding issues associated with such care. She testified regarding each claim line at issue and opined that payment for the claims should have been allowed.

62. Despite this qualified testimony the ALJ in each case denied relief to Dr. Brandwein using an inappropriate standard and in contradiction to the plain language of the permissive LCD.

63. The OMHA decisions also hold Dr. Brandwein financially liable for non-covered costs and that he is not entitled to a waiver of recovery of any overpayments.

64. The non-covered costs for the denied dates of service exceed $169,600.

## <u>COUNT I</u>
(Violation of the Administrative Procedure Act 5 U.S.C. § 706)
[Patient JF]

65. Plaintiff incorporates and realleges Paragraphs 1 through 63 above as if fully set forth herein.

66. Congress has mandated that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(D).

67. The Secretary's decision to deny coverage of this patient's treatment lacks any reasoned basis and is arbitrary and capricious. Further, it is based on application of a future effective LCD that has not been implemented even to this day and was not effective at the time of treatment of this patient.

68. An agency action is arbitrary and capricious if it departs from agency precedent without explanation. "An agency may not, for example, depart from a prior policy sub silentio or simply disregard rules that are still on the books." F*CC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

69. OMHA's decision states that Dr. Brandwein failed to provide "authoritative evidence, such as peer-reviewed journals, studies, and clinical guidelines, to support a finding that the products at issue are safe and effective, not experimental or investigational, and appropriate for the beneficiary's condition."

70. Those requirements, however, are not set forth under either the Medicare statute or the agency's own regulations and are inconsistent with the actual requirements for determining medically reasonable and necessary treatments.

71. MIPM § 3.6.2.2 provides the criteria for reasonable and necessary, including "safe and effective" and "not experimental or investigational", but does not require authoritative evidence.

## COUNT II
(Violation of the Administrative Procedure Act 5 U.S.C. § 706)
[Patient ST]

72. Plaintiff incorporates and realleges Paragraphs 1 through 63 above as if fully set forth herein.

73. Congress has mandated that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(D).

74. The Secretary's decision to deny coverage of this patient's treatment lacks any reasoned basis and is arbitrary and capricious. Further, it is based on application of a future effective LCD that has not been implemented even to this day and was not effective at the time of treatment of this patient.

75. An agency action is arbitrary and capricious if it departs from agency precedent without explanation. "An agency may not, for example, depart from a prior policy sub silentio or simply disregard rules that are still on the books." F*CC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

76. OMHA's decision states that Dr. Brandwein failed to provide "authoritative evidence, such as peer-reviewed journals, studies, and clinical guidelines, to support a finding that the products at issue are safe and effective, not experimental or investigational, and appropriate for the beneficiary's condition."

77. Those requirements, however, are not set forth under either the Medicare statute or the agency's own regulations and are inconsistent with the actual requirements for determining medically reasonable and necessary treatments.

78. MIPM § 3.6.2.2 provides the criteria for reasonable and necessary, including "safe and effective" and "not experimental or investigational", but does not require authoritative evidence.

## COUNT III
### (Violation of the Administrative Procedure Act 5 U.S.C. § 706)
### [Patient AJ]

79. Plaintiff incorporates and realleges Paragraphs 1 through 63 above as if fully set forth herein.

80. Congress has mandated that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(D).

81. The Secretary's decision to deny coverage of this patient's treatment lacks any reasoned basis and is arbitrary and capricious. Further, it is based on application of a future effective LCD that has not been implemented even to this day and was not effective at the time of treatment of this patient.

82. An agency action is arbitrary and capricious if it departs from agency precedent without explanation. "An agency may not, for example, depart from a prior policy sub silentio or simply disregard rules that are still on the books." F*CC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

83. OMHA's decision states that Dr. Brandwein failed to provide "authoritative evidence, such as peer-reviewed journals, studies, and clinical guidelines, to support a finding that the products at issue are safe and effective, not experimental or investigational, and appropriate for the beneficiary's condition."

84. Those requirements, however, are not set forth under either the Medicare statute or the agency's own regulations and are inconsistent with the actual requirements for determining medically reasonable and necessary treatments.

MIPM § 3.6.2.2 provides the criteria for reasonable and necessary, including "safe and effective" and "not experimental or investigational", but does not require authoritative evidence.

## COUNT IV
### (Violation of the Medicare Statute)
[Patient J.F.]

85. Plaintiff incorporates and realleges Paragraphs 1 through 63 above as if fully set forth herein.

86. The Medicare Act entitles beneficiaries, including Dr. Brandwein's patients, to payment for all reasonable and necessary medical and other health services provided to beneficiaries, 42 U.S.C. § 1395k(a)(2), except for services the statute specifically excludes. 42 U.S.C. § 1395y.

87. Dr. Brandwein treated J.F. with Impax, which is reasonable and medically necessary, as evidenced by the expert testimony, industry standard, and Dr. Brandwein's compliance with applicable regulations.

88. The Secretary's denial of this treatment without a reasonable explanation prohibits Part B payment for Impax—a reasonable and necessary treatment for J.F.—and violates the Medicare statute.

## COUNT V
(Violation of the Medicare Statute)
[Patient S.T.]

89. Plaintiff incorporates and realleges Paragraphs 1 through 63 above as if fully set forth herein.

90. The Medicare Act entitles beneficiaries, including Dr. Brandwein's patients, to payment for all reasonable and necessary medical and other health services provided to beneficiaries, 42 U.S.C. § 1395k(a)(2), except for services the statute specifically excludes. 42 U.S.C. § 1395y.

91. Dr. Brandwein treated J.F. with Impax, which is reasonable and medically necessary, as evidenced by the expert testimony, industry standard, and Dr. Brandwein's compliance with applicable regulations.

92. The Secretary's denial of this treatment without a reasonable explanation prohibits Part B payment for Impax—a reasonable and necessary treatment for J.F.—and violates the Medicare statute.

## COUNT VI
(Violation of the Medicare Statute)
[Patient A.J.]

93. Plaintiff incorporates and realleges Paragraphs 1 through 63 above as if fully set forth herein.

94. The Medicare Act entitles beneficiaries, including Dr. Brandwein's patients, to payment for all reasonable and necessary medical and other health services provided

to beneficiaries, 42 U.S.C. § 1395k(a)(2), except for services the statute specifically excludes. 42 U.S.C. § 1395y.

95.Dr. Brandwein treated J.F. with Impax, which is reasonable and medically necessary, as evidenced by the expert testimony, industry standard, and Dr. Brandwein's compliance with applicable regulations.

The Secretary's denial of this treatment without a reasonable explanation prohibits Part B payment for Impax—a reasonable and necessary treatment for J.F.—and violates the Medicare statute.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For an order reversing OMHA's Decision and requiring CMS to reimburse Dr. Brandwein for the services at issue in accordance with applicable guidelines.

B. A declaration that that the treatments provided were in accordance with applicable guidelines.

C. Awarding Plaintiff pre-judgment and post-judgment interest to the extent permitted by law;

D. Awarding Plaintiff reasonable attorney's fees and costs incurred in this action to the extent permitted by law;

E. Providing such other relief as the Court may consider appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: January 14, 2026.

Respectfully submitted,
**BLACK LAW P.A.**
*Attorneys for Plaintiff*
1401 East Broward Boulevard
Victoria Park Centre, Suite 304
Fort Lauderdale, Florida 33301
Telephone:   (954) 320-6220

By:  /s/ Kelsey Black
**KELSEY K. BLACK, ESQ.**
Florida Bar No. 0078925
kb@blacklawpa.com
**PATRICK WIER, ESQ.**
Florida Bar No. 1029540
pw@blacklawpa.com