**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

DR. DANIEL BRANDWEIN, DPM

Plaintiff,

v.

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,

Defendant.
______________________________/

Case No.: 26-cv-60084

Judge Leibowitz

**DECLARATION OF DR. DANIEL BRANDWEIN, DPM**

I, Dr. Daniel Brandwein, DPM, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge:

1. I am the authorized representative and sole owner of Plaintiff in the above-captioned action.

2. I am a board-certified podiatrist licensed in the State of Florida, and I am the owner of Daniel Brandwein, DPM, P.A. (the "Practice"), with a primary office located in Pompano Beach, Florida. I make this Declaration based on my own personal knowledge and on the business records of the Practice that I maintain in the ordinary course of business. If called as a witness, I could and would testify competently to the matters stated herein.

3. My Practice provides advanced wound-care services to Medicare beneficiaries, including elderly and disabled patients who suffer from diabetic foot ulcers and venous leg ulcers. Without this care, many of my patients face serious infection and the risk of amputation. A substantial majority of my Practice's revenue comes from reimbursement for services provided to Medicare and other Government beneficiaries.

4. This action seeks judicial review of three final decisions denying reimbursement for medically necessary services I provided. The total amount in controversy in this case exceeds $3.8 million. The alleged overpayments that CMS is now collecting against me arise from the very same coverage determinations that are at issue in this lawsuit.

5. I have been pursuing relief of these claims for over two years through every avenue available to me and as part of my pursuit of relief have received testimony from experts recognized in my field that the care and treatment relevant to this claim was medically necessary, reasonable, and properly provided.

6. While I have pursued my administrative appeals and now this lawsuit, the Centers for Medicare & Medicaid Services ("CMS") and its contractors have continued to collect the disputed amounts from me. I previously entered into an Extended Repayment Schedule with CMS and made significant payments under that plan.

7. The amortization schedule provided to me reflected that, with interest, I will be required to pay more than $5.1 million on the alleged debt, and interest continues to accrue on the balance every day that this matter remains unresolved.

8. After CMS changed the reimbursement rates for the procedures central to my Practice, I was no longer able to sustain those payments, and I was informed that the balances had been referred to the United States Department of the Treasury for collection.

9. By letter dated March 18, 2026, First Coast Service Options, the Medicare Administrative Contractor, notified me that my Extended Repayment Schedule had defaulted and that it had "reinstated 100% withholding in order to collect the balance." As a result, CMS is currently withholding 100% of the Medicare payments that would otherwise be paid to my Practice for services I continue to render to Medicare beneficiaries.

10. In addition, the Department of the Treasury, on behalf of CMS, is collecting the alleged debt through the Treasury Offset Program, including by withholding other federal payments owed to me.

11. On or about May 20, 2026, the Department of Veterans Affairs withheld a federal payment in the amount of $448.44 which was the total reimbursement I was owed for care to a patient.

12. On or about May 21, 2026, the Department of Veterans Affairs withheld a federal payment in the amount of $73.69 which was the total reimbursement I was owed for care to a patient.

13. I anticipate receiving additional withholding notices from the Department of Veterans Affairs and other government payment or medical insurance reimbursors pursuant to the communications received from the Treasury.

14. I have notified the Treasury of my appeal of this alleged debt and requested that it not pursue recoupment. The Treasury has not responded to my requests.

15. The 100% withholding is financially devastating because of the economics of wound care. Federal law requires that I purchase and pay for the skin-substitute tissue products and other supplies used to treat my patients at the time of treatment; I cannot receive these products for free. Thus when CMS makes a payment it is reimbursing me for expenses that are already final and not enabling a future expense.

16. Based on my experience operating the Practice, approximately 87 cents of every dollar I receive in CMS reimbursement is consumed by these retrospective costs — the products I have already paid for — together with my Practice's operating expenses, including staff wages. Only approximately 13 cents of every reimbursement dollar is money actually available to the Practice.

17. Because CMS already recovers the products and overhead I paid for out of pocket, the recoupment does not merely return money sitting in my account. It forces me to repay CMS for amounts my Practice has already spent. When CMS withholds 100% of my Medicare reimbursements, I receive nothing for services I have rendered, even though I have already paid my suppliers and my staff for the work underlying those very claims and must continue to pay my staff for future treatment.

18. Without reimbursements, I am unable to purchase new products or guarantee my staff's future income.

19. As a direct result of the ongoing 100% CMS withholding and Treasury offset, my Practice is suffering immediate and continuing financial harm, including the inability to meet payroll for my employees; missed or reduced payments to tissue-product suppliers; use of personal funds to keep the Practice operating; and deferral or reduction of patient services. The Practice cannot indefinitely operate while receiving none of its Medicare revenue and I have had to consider options that include closing my Practice.

20. I currently serve about 125 unique patients per month during the summer season. This amount increases to about 270 unique patients per month during the winter season. All of these patients will be forced to find alternate providers if I am unable to continue operation.

21. I currently employed five full time staff and contract with an external company for billing and accounting support. These five individuals will need to be laid off if the recoupment is not paused.

22. I have not taken any salary this year due to the financial impacts of recoupment and have had to take about $100,000 per month from my personal reserves since February of this year to fund the office operations.

23. This harm is not speculative or one-time; it accrues every day and every billing cycle. Each additional period of delay before this dispute is resolved is another period during which the Government withholds 100% of my Medicare reimbursements and collects more of the disputed funds, while interest on the alleged debt continues to grow. Money withheld from my Practice during this period cannot be recovered in time to pay the suppliers and employees who depend on it now, and if the withholding continues, I expect to be forced to curtail the number of Medicare patients I can treat and / or close the Practice within the next two months.

24. If my appeal is ultimately successful, the amount the Government is collecting from me now will have been taken for a debt that was never owed. But the damage to my Practice, my staff, and the Medicare patients who rely on me from the continued withholding in the interim cannot be undone by an eventual judgment in my favor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ____________, 2026.

______________________________
DR. DANIEL BRANDWEIN, DPM

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

DR. DANIEL BRANDWEIN, DPM

Case No.: 26-cv-60084

Plaintiff,

Judge Leibowitz

v.

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,

Defendant.
______________________________/

**DECLARATION OF DR. DANIEL BRANDWEIN, DPM**

I, Dr. Daniel Brandwein, DPM, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge:

1. I am the authorized representative and sole owner of Plaintiff in the above-captioned action.

2. I am a board-certified podiatrist licensed in the State of Florida, and I am the owner of Daniel Brandwein, DPM, P.A. (the "Practice"), with a primary office located in Pompano Beach, Florida. I make this Declaration based on my own personal knowledge and on the business records of the Practice that I maintain in the ordinary course of business. If called as a witness, I could and would testify competently to the matters stated herein.

3. My Practice provides advanced wound-care services to Medicare beneficiaries, including elderly and disabled patients who suffer from diabetic foot ulcers and venous leg ulcers. Without this care, many of my patients face serious infection and the risk of amputation. A substantial majority of my Practice's revenue comes from reimbursement for services provided to Medicare and other Government beneficiaries.

4. This action seeks judicial review of three final decisions denying reimbursement for medically necessary services I provided. The total amount in controversy in this case exceeds $3.8 million. The alleged overpayments that CMS is now collecting against me arise from the very same coverage determinations that are at issue in this lawsuit.

5. I have been pursuing relief of these claims for over two years through every avenue available to me and as part of my pursuit of relief have received testimony from experts recognized in my field that the care and treatment relevant to this claim was medically necessary, reasonable, and properly provided.

6. While I have pursued my administrative appeals and now this lawsuit, the Centers for Medicare & Medicaid Services ("CMS") and its contractors have continued to collect the disputed amounts from me. I previously entered into an Extended Repayment Schedule with CMS and made significant payments under that plan.

7. The amortization schedule provided to me reflected that, with interest, I will be required to pay more than $5.1 million on the alleged debt, and interest continues to accrue on the balance every day that this matter remains unresolved.

8. After CMS changed the reimbursement rates for the procedures central to my Practice, I was no longer able to sustain those payments, and I was informed that the balances had been referred to the United States Department of the Treasury for collection.

9. By letter dated March 18, 2026, First Coast Service Options, the Medicare Administrative Contractor, notified me that my Extended Repayment Schedule had defaulted and that it had "reinstated 100% withholding in order to collect the balance." As a result, CMS is currently withholding 100% of the Medicare payments that would otherwise be paid to my Practice for services I continue to render to Medicare beneficiaries.

10. In addition, the Department of the Treasury, on behalf of CMS, is collecting the alleged debt through the Treasury Offset Program, including by withholding other federal payments owed to me.

11. On or about May 20, 2026, the Department of Veterans Affairs withheld a federal payment in the amount of $448.44 which was the total reimbursement I was owed for care to a patient.

12. On or about May 21, 2026, the Department of Veterans Affairs withheld a federal payment in the amount of $73.69 which was the total reimbursement I was owed for care to a patient.

13. I anticipate receiving additional withholding notices from the Department of Veterans Affairs and other government payment or medical insurance reimbursors pursuant to the communications received from the Treasury.

14. I have notified the Treasury of my appeal of this alleged debt and requested that it not pursue recoupment. The Treasury has not responded to my requests.

15. The 100% withholding is financially devastating because of the economics of wound care. Federal law requires that I purchase and pay for the skin-substitute tissue products and other supplies used to treat my patients at the time of treatment; I cannot receive these products for free. Thus when CMS makes a payment it is reimbursing me for expenses that are already final and not enabling a future expense.

16. Based on my experience operating the Practice, approximately 87 cents of every dollar I receive in CMS reimbursement is consumed by these retrospective costs — the products I have already paid for — together with my Practice's operating expenses, including staff wages. Only approximately 13 cents of every reimbursement dollar is money actually available to the Practice.

17. Because CMS already recovers the products and overhead I paid for out of pocket, the recoupment does not merely return money sitting in my account. It forces me to repay CMS for amounts my Practice has already spent. When CMS withholds 100% of my Medicare reimbursements, I receive nothing for services I have rendered, even though I have already paid my suppliers and my staff for the work underlying those very claims and must continue to pay my staff for future treatment.

18. Without reimbursements, I am unable to purchase new products or guarantee my staff's future income.

19. As a direct result of the ongoing 100% CMS withholding and Treasury offset, my Practice is suffering immediate and continuing financial harm, including the inability to meet payroll for my employees; missed or reduced payments to tissue-product suppliers; use of personal funds to keep the Practice operating; and deferral or reduction of patient services. The Practice cannot indefinitely operate while receiving none of its Medicare revenue and I have had to consider options that include closing my Practice.

20. I currently serve about 125 unique patients per month during the summer season. This amount increases to about 270 unique patients per month during the winter season. All of these patients will be forced to find alternate providers if I am unable to continue operation.

21. I currently employed five full time staff and contract with an external company for billing and accounting support. These five individuals will need to be laid off if the recoupment is not paused.

22. I have not taken any salary this year due to the financial impacts of recoupment and have had to take about $100,000 per month from my personal reserves since February of this year to fund the office operations.

23. This harm is not speculative or one-time; it accrues every day and every billing cycle. Each additional period of delay before this dispute is resolved is another period during which the Government withholds 100% of my Medicare reimbursements and collects more of the disputed funds, while interest on the alleged debt continues to grow. Money withheld from my Practice during this period cannot be recovered in time to pay the suppliers and employees who depend on it now, and if the withholding continues, I expect to be forced to curtail the number of Medicare patients I can treat and / or close the Practice within the next two months.

24. If my appeal is ultimately successful, the amount the Government is collecting from me now will have been taken for a debt that was never owed. But the damage to my Practice, my staff, and the Medicare patients who rely on me from the continued withholding in the interim cannot be undone by an eventual judgment in my favor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 6/11, 2026.

DR. DANIEL BRANDWEIN, DPM