**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

DR. DANIEL BRANDWEIN, DPM,

Plaintiff,

v. Case No.: 26-cv-60084-DSL

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,

Defendant.
_______________________________________/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S EXPEDITED MOTION FOR INJUNCTION OR ALTERNATIVELY MOTION TO STAY RECOUPMENT AND TREASURY OFFSET PENDING JUDICIAL REVIEW AND MEMORANDUM OF LAW**

Defendant, Robert F. Kennedy, Jr., in his official capacity as the Secretary of the United States Department of Health and Human Services ("Secretary"), by and through the undersigned Assistant United States Attorney, submits his opposition to Plaintiff's Expedited Motion for Injunction or Alternatively Motion to Stay Recoupment and Treasury Offset Pending Judicial Review and Memorandum of Law ("Plaintiff's Motion") (ECF No. 26). The law of this circuit has long rejected efforts to alter or enjoin the Medicare recoupment process, which is a key element of the Medicare payment system. *See VNA of Greater Tift Cnty. v. Heckler*, 711 F.2d 1020 (11th Cir. 1983) (holding that the "extraordinary circumstances" for a court to issue an injunction enjoining the Secretary's suspension of reimbursement payments to a Medicare provider were not present); *Mt. Sinai Hosp. of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329 (5th Cir. 1975).[1]

[1] Decisions issued by the former Fifth Circuit prior to the close of business on September 30, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Consistent with this longstanding authority, and for the additional reasons set out below, Plaintiff's Motion should be denied.

## I. **Introduction**

Medicare, the federal health insurance program for the elderly and disabled, is a program of the Social Security Act, at Title XVIII. 42 U.S.C. §§ 1395 *et seq*. It is an enormous program, processing over a billion claims for payment each year. *See Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 525 (5th Cir. 2020) (citation omitted). Given the magnitude of the program, the bulk of the claims get paid upfront on an 'honor system.' *U.S. v. Moss*, 34 F.4th 1176, 1181 (11th Cir. 2022). Fewer than 2% of Medicare claims are reviewed substantively prior to payment being made. *U.S. v. Bergman*, 852 F.3d 1046, 1054 (11th Cir. 2017). *Post*-payment reviews, then, are an important part of the administration of the program and of the Secretary's stewardship of Medicare dollars.[2]

In the instant matter, certain of Plaintiff's claims, for allografts as skin substitutes, were subject to post-payment review. The claims were denied as not being properly payable under the Medicare program's criteria for coverage and payment. Plaintiff appealed the denials of the claims. On appeal, his claims were again denied at the redetermination level (by the appeals department of the Medicare administrative contractor) and subsequently at the reconsideration level (by a different adjudicator, the qualified independent contractor). Plaintiff then sought hearings before Administrative Law Judges ("ALJs") in the Office of Medicare Hearings and Appeals. After conducting hearings, each of three ALJs denied the Medicare claims before him. Plaintiff then sought review of the ALJ decisions by the Medicare Appeals Council, the top administrative adjudicator. When the Council was unable to issue decisions within 90 days,

---

[2] These are *not* determinations of fraud. They are simply administrative determinations of whether claims that have been paid satisfied Medicare's coverage and payment criteria.

Plaintiff exercised the right to escalate the matter to district court for judicial review, filing the pending Complaint, which consolidates the final agency decisions rendered by the three ALJs.

The jurisdictional basis for this civil action is found in the Medicare statute itself, at 42 U.S.C. § 1395ff(b)(1), which incorporates 42 U.S.C. § 405(g), the Social Security Act's judicial review provision. *See* 42 U.S.C. § 1395ff(b)(1)(A) (providing for "judicial review of the Secretary's final decision . . . as is provided in section 405(g) of this title"). Under section 405(g), a reviewing court performs "a very limited role." *See Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984) (citations omitted). The court discerns whether the record contained substantial evidence in support of the agency's findings and whether the agency applied the correct legal standards. *Gulfcoast Med. Supply, Inc. v. Sec'y, Dep't of Health & Hum. Servs.*, 468 F.3d 1347, 1350 n.3 (11th Cir. 2006) (citation omitted). But the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [agency]." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II. <u>The recoupment of Medicare overpayments</u>

Given that Medicare claims are paid on upfront basis, automatically (as described above), and given that *pos*t-payment reviews of those claims thus become a key measure for ensuring that only proper payments are being made, the determination of overpayments is a common occurrence in the administration of the Medicare program. When a health care practice enrolls in the Medicare program in order to seek Medicare revenues, the practice subscribes itself to the program's "pertinent laws and regulations . . ." *U.S. v. Hagen*, 60 F.4th 932, 937 (5th Cir. 2023). These requirements entail, *inter alia*, the recoupment of any overpayments that may be determined to have occurred.

The Secretary has a duty to recover Medicare overpayments. His interest "in . . . protect[ing] Medicare funds is compelling," *Dominion Ambulance, L.L.C. v. Azar*, 968 F.3d 429, 441-442 (5th Cir. 2020), as these funds are not unlimited. Recoupment is the principal means of recovery. "[T]he Medicare Act specifically recognizes recoupment of overpayments." *Szekely v. Fla. Med. Ass'n*, 517 F.2d 345, 348, 349 (5th Cir. 1975); *see U.S. v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 16 (1st Cir. 2005) (". . . Provisions of the Medicare Act expressly authorize the Secretary to reopen initial payment determinations and to recoup overpayments administratively . . . *see* 42 U.S.C. § . . . 1395gg . . ."). Recoupment is an adjustment for previous Medicare payments "to which [a healthcare practice] was never entitled." *Fla. Med. Ctr. of Clearwater, Inc. v. Sebelius*, 614 F.3d 1276, 1282 (11th Cir. 2010). "Recoupment is how the federal government accounts for overpayments of Medicare funds . . . by withholding [a previous overpayment amount] from future Medicare payments made to [the healthcare practice that received the overpayment]." *Guidry v. Ctrs. for Medicare & Medicaid Servs.*, Case No 2:21-cv-769, 2022 WL 992248, at *2 (M.D. Fla. Apr. 1, 2022).[3]

---

[3] Plaintiff mentions installment terms for recoupment conducted over an extended period of time. The Secretary's sole legal obligation in this regard is to approve a request for a term of 6 months: the approval of any term longer than that is left to his judgment and discretion. *See* 42 U.S.C. § 1395ddd(f)(1)(A). The courts have recognized that the use of installment terms for recoupment or repayment is a matter of administrative discretion. *See*, *e.g.*, *U.S. v. Consumer Health Servs. of America*, 108 F.3d 390, 396 (D.C. Cir. 1997) (noting that administrative flexibility in operating Medicare program permits the Secretary to enter into agreement for recovery of overpayment over time if he finds it to be consistent with the Medicare program's interest); *In re S. Inst. for Treatment & Evaluation, Inc.*, 217 B.R. 962, 964 (Bankr. S.D. Fla. 1998) (characterizing the "[agency's] consideration (and ultimate rejection) of [a healthcare business'] proposed extended cash repayment plan [a]s purely a matter within its administrative discretion"); *Faith Home Health Servs. v. Shalala*, No. 98-329-A, 1998 WL 901619 (M.D. La. May 8, 1998) (dismissing a complaint about the agency's denial of a healthcare provider's request for installment terms).

When an overpayment is determined on a post-payment review of Medicare claims, and the determination is timely appealed, Congress specified that the recoupment of the overpaid amounts would not begin immediately. The recoupment does not commence until the appellant has received a decision at each of the first two levels of appeal, *i.e.*, the redetermination level and the reconsideration level. 42 U.S.C. § 1395ddd(f)(2)(A). (These are the two levels of appeal at which the practice is expected to submit evidence in support of its position. *See* 42 U.S.C. § 1395ff(b)(3)). So, recoupment will not begin until and unless the overpayment determination has been reviewed -- and upheld -- by two separate administrative adjudicators.

This is the provision Congress chose to implement for Medicare claims that are denied on post-payment review and then appealed. Congress could have supplied more; and it could have supplied less.[4]

After a reconsideration decision is rendered that upholds an overpayment determination based on a post-payment review of claims, the recoupment of the overpayment begins. At this point, the Secretary's responsibility to recover overpaid federal dollars becomes operative.

Over the years, plaintiffs' challenges to Medicare recoupment have been fashioned in various circumstances and in various ways. Around 2020, for instance, a number of healthcare practices and providers asked the courts to enlarge the time period during which recoupment would not occur, arguing that they were suffering a violation of constitutional rights when recoupment

---

[4] For types of Medicare overpayments other than those determined on the basis of a post-payment review of Medicare claims, there is no such provision for a delayed commencement of recoupment. A common example is an overpayment that may be determined in connection with a hospital's required annual cost reporting to the Medicare program, a process in which the possibility of overpayment is "inherent." *See In re TLC Hosps., Inc.*, 224 F.3d 1008, 1014 (9th Cir. 2000). In the event that an overpayment of *this* sort is determined, the recoupment of the overpayment amount begins immediately, *regardless of* any appeal the hospital may file. *See* 42 C.F.R. § 405.379(b)(2) (identifying this among categories of Medicare overpayments for which recoupment is not delayed).

began while they were waiting to be heard at the next level of the appeal process (the ALJ level). The appellate courts, however, rejected these challenges. *See*, *e.g.*, *Padda v. Becerra*, 37 F.4th 1376 (8th Cir. 2022); *Sahara Home Care*, 975 F.3d 523; *Accident, Injury & Rehab., PC v. Azar*, 943 F.3d 195 (4th Cir. 2019); *Integrity Social Work Servs., LCSW, LLC v. Becerra*, No. 21-2757-cv, 2022 WL 1930866 (2nd Cir. June 6, 2022).

As the Secretary noted at the outset, the law in this circuit has long proscribed any alteration of the Secretary's Medicare recoupment. In 1983, the Court of Appeals for the Eleventh Circuit observed that healthcare practices and providers that enroll in the Medicare program are plainly on notice that payment reviews can and do occur, and hence, that overpayments can be determined. *See VNA of Greater Tift Cnty.*, 711 F.2d at 1034. The Court recognized that the courts could easily be "inundated" with requests for relief from overpaid practices and providers any time the recoupment of a Medicare overpayment is underway. *See id.* The Court found no basis to deviate from the statutory scheme for recoupment. *Id.*; *see Mt. Sinai Hosp. of Greater Miami*, 517 F.2d at 333 (reversing district court's injunction against recoupment of Medicare overpayments); *Georgia Ophthalmic Network, Inc. v. Sullivan*, No. 1:90-CV-2704-RLV, 1990 WL 264718 (N.D. Ga. Dec. 18, 1990) (denying relief against Medicare recoupment); *In re IHN Podiatry Servs., PLLC*, Case No. 8:26-bk-00384, --- B.R. ----, 2026 WL 927058 (Bankr. M.D. Fla. Apr. 6, 2026) (permitting continued recoupment of overpayments determined on post-payment reviews of bankrupt podiatric practice's Medicare claims). These case authorities underscore that there is no proper basis for augmenting or otherwise altering Congress' provision for the recoupment of overpayments.[5]

---

[5] Plaintiff also complains about offsets being taken by the Treasury Offset Program of the U.S. Department of Treasury. But as the head of a federal department, the Secretary must comply not only with Medicare law itself but also with the Federal Claims Collection Act, 31 U.S.C. §§ 3716 *et seq*, and its regulations, regarding the recovery of outstanding fiscal obligations due to the Federal Government.

## III. <u>Plaintiff cannot satisfy the requirements for injunctive relief.</u>

Coming before the Court for judicial review, Plaintiff seeks to fashion a request for an injunction against the continuation of recoupment at the present time. *See* ECF No. 26, pp. 11-19. The purpose of a preliminary injunction is to preserve the status quo until a controversy can be adjudicated fully. *Robinson v. Att'y Gen.*, 957 F.3d 1171, 1178-79 (11th Cir. 2020). Here, the recoupment that has been underway *is* the status quo. So, Plaintiff's Motion is not an attempt to preserve the status quo, but an effort to alter it.

### A. <u>The applicable standard</u>

A preliminary injunction is, in any event, an "extraordinary and drastic remedy," *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (citations omitted), and "a court should be particularly cautious when contemplating relief that implicates public interests." *Salazar v. Buono*, 559 U.S. 700, 724 (2020) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (2010)). Given that Plaintiff is asking the Court for special treatment for one podiatrist, in a statutory program that administers federal dollars nationwide, that processes claims from nearly two million healthcare practices and companies, and that recoups overpayments routinely in accordance with statutory authority, the advisement of caution clearly applies to the matter at hand.

A movant for injunctive relief must establish each of four factors: 1) that the movant has a substantial likelihood of prevailing on the merits; 2) that the movant will suffer irreparable injury unless an injunction issues; 3) that the balance of equities tips in the movant's favor; and 4) and that an injunction would be in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). The movant bears the burden of persuasion on all four elements. *Sofarelli v. Pinellas Cnty.*, 931 F.2d 718, 724 (11th Cir. 1991) (citation omitted). If any element is not proven, there is no need to address the others. *Id.*

### B. <u>Plaintiff has not shown a substantial likelihood of prevailing on the merits.</u>

Plaintiff asserts he has a substantial likelihood of prevailing on the merits of his civil action for judicial review of the ALJ decisions. *See* ECF No. 26, at p. 11. He spends several pages arguing the merits of his case, discussing evidence that he believes supported his view that Medicare payment was proper. *See* ECF No. 26, at pp 12 -19.

But Plaintiff seems to ignore the reality that the fact-finding process has been completed, and that the nature of the review to be conducted in the instant matter (under the terms of 42 U.S.C. § 405(g)) does not entail any weighing or re-weighing of evidence, but rather, ascertaining that there was substantial evidence for the findings that were made by the agency decisionmakers, the ALJs. That is to say, Plaintiff ignores the fact that the substantial evidence standard of review is a rather deferential standard. *See Palm Valley Health Care, Inc. v. Azar*, 947 F.3d 321, 328 (5th Cir. 2020) (describing the substantial evidence standard, which applies to the judicial review of Medicare payment decisions, as a "low evidentiary bar").[6]

---

[6] In arguing its position on the merits, Plaintiff also appears to make certain legal errors. Plaintiff writes at length about a local coverage determination ("LCD") that he believes should have dictated the outcomes of his appeals. *See* ECF No. 26, at pp. 12 – 17. An LCD is the issuance of an individual Medicare administrative contractor on whether a particular item or service will or will not be covered, in that individual contractor's jurisdiction. 42 U.S.C. § 1395ff(f)(2)(B). While an LCD "contains guidelines to follow in order to bill properly," *U.S. v. Bergman*, 852 F.3d 1046, 1054 (11th Cir. 2017), it is "not binding" authority, *see U.S. v. AseraCare*, 938 F.3d 1278, 1288 (11th Cir. 2019). The ALJs in the Office of Medicare Hearings and Appeals are not bound by LCDs, though they do give them substantial deference. 42 C.F.R. §§ 405.1062(a) – (b).

Further, Plaintiff invokes a "treating physician" standard from Social Security disability law. *See* ECF No. 26, at p.17. But that principle of disability law is not applicable to Medicare payment determinations. *See, e.g.*, *Gulfcoast Med. Supply, Inc. v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, No. 8:04-CV-2610-T-26EAJ, 2005 WL 3934860, at *7 (M.D. Fla. Nov. 16, 2005) (rejecting a healthcare company's attempt to invoke Social Security's treating physician rule in a case about Medicare payment), *aff'd* 468 F.3d 1347 (11th Cir. 2006).

Also, one should not fail to note that Plaintiff's several appeals were adjudicated by *three different ALJs* (now consolidated into this one civil action for judicial review). *See* ECF No. 26-1 (decision of ALJ S. Andrew Grace); 26-2 (decision of ALJ Robert Preston); 26-3 (decision of ALJ Kyle Alexander). Each of these ALJs ruled unfavorably to Plaintiff. So, too, had lower-level adjudicators done, at the redetermination and reconsideration levels of Plaintiff's appeals. The fact that several different ALJs all ruled against Plaintiff tends to undercut any suggestion that Plaintiff is substantially likely to prevail now, particularly given the standard of review that governs.

Moreover, this is not the first civil action for review of final agency decisions denying Medicare payment for allografts. Recently the Medicare program has conducted a substantial number of post-payment reviews of claims for allografts as skin substitutes. There have been a number of claims denied on these post-payment reviews, and a number of administrative appeals challenging those denials. While there may be various allograft products at issue, and while each appeal is adjudicated on the basis of the evidence entered into the record in that appeal, the resulting civil actions for judicial review of the final agency decisions have, thus far, culminated in affirmances of the denials of the claims at issue. *See Ctr. for Innovations in Evaluative Med., LLC v. Becerra*, Case No. 3:24-362, 2026 WL 1676388, -- F.Supp.3d -- (M.D. La. May 22, 2026); *Foot v. Kennedy, Jr.*, Case No. 24-cv-00869, 2026 WL 875235 (D.D.C. Mar. 31, 2026), *appeal docketed* Case 26-5149 (D.C. Cir. May 5, 2026); *Family Foot & Leg Ctr. v. Kennedy, P.A.*, Case No.: 2:24-cv-547, 2025 WL 2538474 (M.D. Fla. Sept. 4, 2025). Although these previous court rulings may not be dispositive of the instant matter, they clearly do not lend support to any suggestion that Plaintiff has a substantial likelihood of prevailing on the merits of this civil action.

**C. <u>Plaintiff has not shown irreparable harm.</u>**

Plaintiff complains that continued Medicare recoupment would force his practice to fail and would leave his patients without Plaintiff's services. *See* ECF No. 26 at p. 19.[7] Similar arguments have been made by many providers facing recoupment over the years, and these arguments have been properly rejected by the courts.

The Supreme Court has discussed the nature of "irreparable harm." In a case involving a federal employee's request that a court restrain her employer from terminating her employment until she could appeal the decision through the applicable administrative channels, lest she be "deprived of her income for an indefinite period of time," the Court ruled that as a general matter, monetary loss, such as loss of income, does not constitute irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 63, 89, 90 (1974). In the Medicare arena, the Eleventh Circuit spoke to the question of "irreparable harm" in *V.N.A. of Greater Tift Cnty.*, 711 F.2d 1020. There a healthcare provider complained that because of the withholding of its Medicare payments, the provider would be "forced out of business" before its pending Medicare appeal could be resolved. *Id.* at 1031. As noted *supra*, the Eleventh Circuit denied relief. If difficult financial circumstances were a sufficient criterion to evade the elements of Medicare law, "the courts would be inundated with claims from . . . providers" whenever they were aggrieved by a Medicare determination. *Id.* at 1034. The Court recognized that providers "take a knowing risk," when they choose to rely on Medicare payments, that payment may be delayed or denied. *See id.; accord In re Neuman*, 55 B.R. 702, 704 (S.D.N.Y. 1985) (declining to order the release of Medicare funds although the "appellant claimed he would be forced to close the hospital immediately" on account of the

---

[7] By way of context, the Secretary's website *medicare.gov* identifies over 175 specialists in podiatry practicing in Plaintiff's geographical area. *See* https://www.medicare.gov/care-compare/

Medicare recoupment that was occurring); *Lynncore Medgrp., Inc. v. Sebelius*, Case No. 4:11-cv-195, 2011 WL 6116536 at *6 (E.D. Tex. Nov. 10, 2011) (rejecting a healthcare company's complaint that it would suffer irreparable harm because it would have to shut down and its employees would lose jobs); *Reliable Home Health Care, Inc. v. Thompson*, Case No. 01-2343, 2002 WL 22025 at *5 (E.D. La. Jan. 4, 2002) (noting that although the healthcare provider "assert[ed] that the Secretary's actions have been economically crippling and that [the provider] will be forced to go out of business . . . [e]conomic harm alone is insufficient to constitute irreparable harm").

It also bears note that Congress provided the remedy that Congress saw fit to provide: Congress included a make-whole term in the Medicare statute, for the circumstance in which an overpayment that has been recouped eventually gets overturned. This provision indicates that, "Insofar as [an overpayment] determination against the [healthcare practice or provider] is later reversed, the Secretary shall provide for repayment of the amount recouped plus interest." 42 U.S.C. § 1395ddd(f)(2)(B); *see* 42 C.F.R. § 405.378(j) (the implementing rule on interest). Congress supplied the remedy it wished to supply.

Plaintiff would prefer that his overpayments not be recouped any further and asserts that the recoupment is difficult for him to sustain. But there is nothing about Plaintiff's circumstances that "so far depart from the normal situation" of any healthcare practice or provider from whom a Medicare overpayment is being recouped "as to justify fundamental deviation from the statutory scheme," *see V.N.A. of Greater Tift Cnty.*, 711 F.2d at 1034.

**D. The balance of equities does not tip in Plaintiff's favor**

"[T]he government's interest in conserving scarce [Medicare] resources . . . is much stronger than the financial interest of a corporation" or other business. *Northwest Healthcare, L.P.*

*v. Sullivan*, 793 F.Supp. 724, 727-28 (W.D. Tex. 1992) (citations omitted). Moreover, the U.S. District Court for this district has recognized candidly that it is not the purpose of the Medicare program to ensure the desired level of "perpetual financial success" for a healthcare business. *See Fla. Med. Ctr., Inc. v. Shalala*, No. 94-7026, 1996 WL 636141, at *7 (S.D. Fla. Feb. 27, 1996).

The Secretary has a duty. He is obligated to follow the principles that Congress laid down for the administration of the Medicare program – and to implement those principles and rules consistently, across all healthcare practices and providers. The wishes or preferences of an individual practice or provider to be granted additional relief do not give rise to a right to be treated differently. Plaintiff can claim no right to treatment that is different from any other practice that is subject to the recoupment of a Medicare overpayment.

**E. <u>An injunction would be adverse to the public interest.</u>**

The public interest is always at issue when there is a request for injunctive relief against a program that administers federal law with public dollars. The public interest lies in the effective administration of the Medicare Program nationwide. *Grp. Health, Inc. v. Schweiker*, 549 F.Supp. 135, 145 (S.D. Fla. 1982). By statute, Congress called for the recoupment of overpayments. *Szekely*, 517 F.2d at 348, 349. Congress specified that recoupment would not proceed during the pendency of the first two levels of an administrative appeal of a denial of Medicare claims on a post-payment review, s*ee* 42 U.S.C. § 1395ddd(f)(2), thus giving the appellant two discrete opportunities to challenge the denial determination in front of two independent adjudicators before recoupment would begin. Thereafter, recoupment proceeds. It is the role of the Secretary to serve the public interest, by uniformly and consistently carrying out the responsibilities and authorities with which Congress has entrusted him.

## IV. Conclusion

On the basis of the foregoing, the Secretary respectfully submits that Plaintiff falls far short of obtaining the requested relief in his Motion, and Plaintiff's Motion should be denied.

Dated: June 25, 2026

Respectfully submitted,

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

By: ***Mary Beth Ricke***
MARY BETH RICKE
Fla Bar No. 107213
Assistant United States Attorney
Email: mary.ricke@usdoj.gov
500 E. Broward Blvd., Suite:700
Fort Lauderdale, Florida 33394
Tel.: (954) 660-5137
*Counsel for Defendant*