**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

DR. DANIEL BRANDWEIN, DPM

Case No.: 26-cv-60084

Plaintiff,

Judge Leibowitz

v.

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,

Defendant.
_________________________________/

**PLAINTIFF'S REPLY IN SUPPORT OF HIS EXPEDITED MOTION FOR INJUNCTION OR ALTERNATIVELY MOTION TO STAY RECOUPMENT AND TREASURY OFFSET PENDING JUDICIAL REVIEW**

Plaintiff, Dr. Daniel Brandwein, DPM, by and through undersigned counsel, respectfully submits this Reply in support of his Expedited Motion for Injunction or Alternatively Motion to Stay Recoupment and Treasury Offset Pending Judicial Review [ECF No. 26] (the "Motion"), and in reply to Defendant's Response in Opposition [ECF No. 27] (the "Response"), and states as follows:

## INTRODUCTION

The Response answers a motion Dr. Brandwein did not file. Nearly every authority Defendant marshals—*VNA of Greater Tift*, *Mt. Sinai*, and the recent wave of provider due-process cases—involved providers who asked a court to interrupt the administrative process midstream, *before* any final agency decision. Dr. Brandwein did the opposite. He completed every level of administrative review

available to him, escalated when the Medicare Appeals Council failed to act within its regulatory deadline, and is now properly before this Court on judicial review under 42 U.S.C. § 405(g). The question his Motion actually presents—whether a district court already vested with jurisdiction may stay collection of the very sums under review so that its eventual judgment is not an empty gesture—is one Defendant's cases never confronted, and the Response never answers. Plaintiff is likely to prevail on the merits because he provided medically necessary treatment to the subject patients in accordance with the then applicable criteria. That the appeal system has failed him, does not make the Secretary correct.

## I. Defendant's Authorities Address Pre-Exhaustion Challenges; None Speaks to a Stay Ancillary to Pending § 405(g) Review.

Defendant leads with *VNA of Greater Tift County v. Heckler*, 711 F.2d 1020 (11th Cir. 1983), and *Mt. Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329 (5th Cir. 1975), as though they "long rejected" the relief sought here. Response at 1. Neither did. In both, providers sought to halt the Secretary's collection activity while the administrative process was still available to them; neither involved a provider who had exhausted that process and stood before the court on § 405(g) review. And *VNA* announced no categorical bar: the Eleventh Circuit held only that the record before it did not present circumstances that "so far depart from the normal situation…as to justify fundamental deviation from the statutory scheme."

711 F.2d at 1034. That is a standard capable of being met—it simply was not met there. It is met here.

The same is true of the appellate decisions Defendant gathers at page 6 of the Response. *Padda*, 37 F.4th 1376 (8th Cir. 2022); *Sahara Health Care*, 975 F.3d 523 (4th Cir. 2019); *Accident, Injury & Rehabilitation*, 943 F.3d 195 (4th Cir. 2019); and *Integrity Social Work Services* No. 21-2757-cv, 2022 WL 1930866 (2nd Cir. June 6, 2022) were procedural due-process challenges brought by providers still awaiting ALJ hearings, who needed collateral-claim jurisdiction to be in court at all. Those courts rejected the challenges precisely because Congress gave such providers an adequate remedy: escalation through the remaining administrative levels and, ultimately, judicial review in the district court. *See Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 529–30 (5th Cir. 2020) (provider's ability to escalate its claims ensures timely disposition notwithstanding delays at the ALJ stage); *Accident, Injury & Rehab., PC v. Azar*, 943 F.3d 195, 203–05 (4th Cir. 2019) (same). Defendant's own authorities therefore presuppose that the judicial review Dr. Brandwein now invokes is a meaningful remedy. Dr. Brandwein did exactly what those decisions prescribe. Yet on Defendant's reading, the safety valve those courts relied upon leads nowhere: a provider must endure 100% withholding through years of administrative delay, and when he finally arrives in an Article III court, that court is powerless to keep the controversy alive long enough to decide it. No case Defendant cites so holds.

The Court's authority to grant the relief requested is settled. The power to stay agency action pending judicial review is "part of [a court's] traditional equipment for the administration of justice." *Nken v. Holder*, 556 U.S. 418, 419 (2009) (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9–10 (1942)). As *Scripps-Howard* explained, where the legislature provides resort to the courts to correct agency error, judicial review "would be an idle ceremony if the situation were irreparably changed before the correction could be made." *Scripps, supra,* 316 U.S. at 10. Section 1395ddd(f)(2) governs when CMS's administrative self-help may *begin*; it says nothing about the equitable authority of a reviewing court, and Congress's silence does not strip federal courts of that traditional power. Defendant's contrary reading would permit the Government to collect the entire disputed amount—it has already recouped over $1.2 million and seeks approximately $4.77 million more through Treasury offset—before the Court could ever rule. The Federal Claims Collection Act, 31 U.S.C. §§ 3716 *et seq.*, is no obstacle. Response at 6 n.5. The Treasury offset is simply a second channel for collecting the same disputed debt; an order of this Court staying collection reaches it, or the relief is illusory.

## II. <u>Defendant's "Status Quo" Argument Misstates the Law.</u>

Defendant argues the Motion must fail because "the recoupment that has been underway *is* the status quo." Response at 7. Binding precedent forecloses that argument. "It must not be thought…that there is any particular magic in the

phrase 'status quo.' The purpose of a preliminary injunction is *always* to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). Where "the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury," including "by returning to the last uncontested status quo between the parties." *Id.* The last uncontested status between these parties preceded the disputed overpayment determinations, when Dr. Brandwein's claims were paid in the ordinary course—not the Government's present 100% withholding. In all events, "[t]he focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo." *Id.*

## III. <u>Plaintiff Has Shown a Substantial Likelihood of Success; Defendant Answers an Argument Plaintiff Does Not Make.</u>

Defendant devotes its merits discussion to the deference owed agency fact-finding, accusing Plaintiff of asking the Court to "reweigh" evidence. Response at 8. But the Motion's merits showing rests principally on *legal error*, which no substantial-evidence deference can insulate: the adjudicators (1) denied the claims under a peer-reviewed-literature requirement that appears nowhere in operative LCD 36377; (2) borrowed the standard of a proposed LCD that never took effect; and (3) failed to give the operative LCD "substantial deference" or to explain their departure from it, as 42 C.F.R. § 405.1062(a)–(b) requires. Defendant's own

authority confirms that review under § 405(g) asks not only whether substantial evidence supports the agency's findings but also "whether the agency applied the correct legal standards." *Gulfcoast Med. Supply, Inc. v. Sec'y, Dep't of Health & Hum. Servs.*, 468 F.3d 1347, 1350 n.3 (11th Cir. 2006) (cited at Response 3). And the retroactive application of a later standard is independently unlawful. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

Defendant's observation that an LCD is "not binding" on ALJs, Response at 8 n.6, proves Plaintiff's point. The governing regulation requires ALJs to give the LCD substantial deference and to explain any departure from it. 42 C.F.R. § 405.1062(a)–(b). Here they did neither; they set the operative LCD aside in favor of a standard that never became law, and instead deferred to a never effective LCD. Nor does the tally of adjudicators advance the analysis: three ALJs applying the same erroneous standard is repetition, not corroboration. On the contrary, Plaintiff believes this consistency is actual a pattern of the government's regret in approving the initial permissive LCD. Rathan the give the deference required under the permissive LCD, the government is collaborating (possibly through directing specific outcomes at the agency's ALJ level) to recoup the monies it authorized and then later regretted spending. Finally, the out-of-district allograft decisions collected at page 9 of the Response are, as Defendant concedes, not dispositive—each was resolved on its own administrative record, and none binds this Court.

**IV. <u>The Irreparable-Harm Showing Stands Unrebutted.</u>**

Defendant reads *Sampson v. Murray* for more than it holds. The Supreme Court expressly declined to "foreclos[e] relief in the genuinely extraordinary situation," recognizing that circumstances may "so far depart from the normal situation that irreparable injury might be found." 415 U.S. 61, 92 n.68 (1974). *VNA* borrowed that very phrase. 711 F.2d at 1034. The "normal situation" framework Defendant invokes is thus a demanding standard—not a categorical bar—and this is the extraordinary case. The record evidence, which Defendant nowhere controverts, shows 100% withholding of the practice's Medicare revenues combined with Treasury offsets against a practice in which approximately 87 cents of every reimbursement dollar was already spent on tissue products and overhead for the very patients whose claims are at issue. [ECF No. 26-7]. That is not the "loss of income" *Sampson* addressed; it is the imminent destruction of an ongoing medical practice.

The Eleventh Circuit recognizes that the destruction of an ongoing business—the loss of its customers and goodwill—is irreparable precisely because it is difficult, if not impossible, to measure and remedy in money. *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991); *see also Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1288–89 (11th Cir. 2013) (economic harm is irreparable where later monetary recovery against the sovereign is unavailable). Rebuilding a bankrupt and closed medical practice is

nearly impossible. *See Spiegel v. City of Houston*, 636 F.2d 997 (5th Cir., Unit A, 1981). That is why there is irreparable injury in this case. Defendant's answer—that Congress supplied a make-whole remedy of repayment with interest, 42 U.S.C. § 1395ddd(f)(2)(B)—presupposes a practice that survives to be repaid.[1] Repayment with interest cannot re-open a shuttered practice, recall laid-off staff, or restore patients whose advanced wound care was interrupted mid-treatment. And Defendant's suggestion that Dr. Brandwein's patients may simply select one of "over 175 specialists in podiatry" in the area, Response at 10 n.7, is attorney argument unsupported by any record evidence; it also misapprehends the harm, which includes the interruption of continuity of care for elderly and disabled patients facing serious infection and the risk of amputation. [ECF No. 26 at 19–20; ECF No. 26-7]. The district-court and bankruptcy decisions Defendant collects, Response at 10–11, again involved providers who had not completed the administrative process; none addressed irreparable harm in the posture presented here.

## V. <u>**The Balance of Equities and the Public Interest Favor a Stay.**</u>

Defendant identifies no concrete harm from a temporary pause in collection. If the overpayment determinations are ultimately upheld, the debt remains fully collectible, with interest accruing in the Government's favor throughout. Against

---

[1] It is actually Defendant's best interests that the Plaintiff be allowed to keep operations, should it shut down, there will be no funds to recoup if the Secretary prevails in this action.

that modest delay stands the destruction of the practice—and, with it, the Government's own most practical source of recovery. Nor is the Secretary's interest in uniform administration impaired by a case-specific equitable stay entered by an Article III court on a completed administrative record; that is the ordinary operation of judicial review, not "special treatment." Response at 7. And there is no risk that granting relief here will "inundate" the courts, Response at 6: the posture presented—full exhaustion through Council escalation followed by § 405(g) review—is the narrow, statutorily channeled path Congress itself created, not a bypass of it. The public interest is served by preserving access to medically necessary wound care for elderly and disabled beneficiaries and by ensuring that the judicial review Congress provided is not "an idle ceremony." *Scripps-Howard*, 316 U.S. at 10.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion, Plaintiff respectfully requests that the Court enter an order staying recoupment and Treasury offset of the disputed Medicare amounts at issue in this action pending the Court's judicial review and final judgment, and granting such further relief as the Court deems just and proper.

Respectfully submitted,

**BLACK LAW P.A.**
*Attorneys for Plaintiffs*
1401 East Broward Boulevard

Victoria Park Centre Suite 304
Fort Lauderdale, Florida 33301
Telephone: (954) 320-6220

By: Patrick Wier
**KELSEY K. BLACK, ESQ.**
Florida Bar No. 0078925
kb@blacklawpa.com
**PATRICK WIER, ESQ.**
Florida Bar No. 1029540
pw@blacklawpa.com