**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

DR. DANIEL BRANDWEIN, DPM, PA,

Plaintiff,

v.

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,

Defendant.
______________________________________/

Case No.: 0:26-cv-60084-DSL

Judge Leibowitz

**PLAINTIFF'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL BRIEF**

Plaintiff, Dr. Daniel Brandwein, DPM, PA, pursuant to this Court's Order [ECF No. 39], respectfully submits this Reply in support of its Supplemental Brief Following Hearing [ECF No. 47] and in reply to Defendant's Response [ECF No. 53], and states as follows:

## INTRODUCTION

The Secretary's response misses the mark and waives any argument that Plaintiff's documentation and record citations fail to support each required element of the LCD. The Court reduced supplemental briefing to a single assignment: "We're just going to line up the prongs of the 2019 LCD and the components that determine whether in each of the three sets of facts that LCD has been satisfied…That's the task." (Hr'g Tr. 32:1-4). Plaintiff was directed to provide "pinpoint citation to the administrative record" showing "the governing LCD has been satisfied," (Tr. 69:11-14), and the Secretary was directed "to respond to their supplement…as to why or why not that does not satisfy the governing LCD." (Tr. 69:17-20). The Court called this "the paramount task for both sides," (Tr. 70:12), instructed the parties to match the record to the LCD, (Tr. 74:16-18), and warned "a failure to pincite by either side is going to be deemed a waiver." (Tr. 74:13-14).

Plaintiff performed that task: the Supplemental Brief matches every documentation requirement to pinpoint citations for each beneficiary. The Response does not contest a single row of Plaintiff's requirement-by-requirement showing. It does not quote an LCD requirement and cite the record to show that requirement unsatisfied. It retreats from the Secretary's concession that the 2019 LCD governs, rebuilds the decisions on the MPIM this Court described as "surplusage" (Tr. 31:2-9), and "really of no moment," (Tr. 70:2), relies on the ALJs' faulty reasoning, and re-argues injunction factors recycled from ECF No. 27. Under the Court's ruling, the Response's failure to pincite any unmet LCD requirement is a waiver. The ALJs disregarded the LCD and instead denied the claims for want of peer-reviewed literature. Plaintiff has shown a substantial likelihood of success on the merits, and the Motion should be granted.

## I. <u>The Response Misstates the Purpose of the Supplemental Brief</u>

The Secretary's Response faults the Supplemental Brief for not "mention[ing] the standard of review." ECF No. 53 at 2. Instead, the brief met prescription by this Court: pinpoint citations, which "set the ground for all legal argument to follow…" (Tr. 74:10-12, 16-18).[1] ECF No. 39 requested supplemental briefing for the purpose defined: to match the record to each LCD requirement (Tr. 69:17-20; 70:12; 74:13-18). Measured against that Order, the Response fails.

First, it never performs the core task. It does not identify an unsatisfied LCD requirement. Its citations describe what the ALJs wrote; not engaging LCD requirements or Plaintiff's citations. Second, it relitigates the premise of the exercise—arguing the LCD does not "control" and is merely "a starting point," ECF No. 53 at 3-4—after conceding on the record and the Response that the 2019 LCD governs all three cases. (Tr. 30:23-31:1); ECF No. 53 at 3 n.3. Third, nearly a third of the Response, ECF No. 53 at 12-16, re-argues irreparable harm, the equities, and the public interest. The Court permitted "further arguments…in light of today's hearing," (Tr. 69:21-23),

[1] The governing standards were fully briefed at ECF Nos. 26 and 31 and argued at the hearing.

but those pages identify nothing from the hearing that alters the showing already made.

Plaintiff reiterates ECF No. 31 at 6-9 and the hearing record as to the remaining factors, and notes three things. First, the claimed "delay" was explained on the record: pursuit a modified repayment plan or an agreement with the Secretary—who, by its own account, was not aware of the suit until May. (Tr. 21:19-25; 25:20-26:1). With that explanation in hand, the Court described the Motion as "clearly a colorable motion for preliminary injunction." (Tr. 74:8-9). *Wreal*, by contrast, involved a five-month delay the movant never accounted for. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Second, the irreparable-harm evidence was not "self-serving" say-so; it was unrebutted, sworn testimony, subject to cross-examination, of 100% withholding and Treasury offset against a practice that had already spent roughly 87 cents of every reimbursement dollar on tissue products and overhead for these very patients. [ECF No. 26-7]. Third, as the Court observed, "the doctor is not the United States Government and has to pay bills." (Tr. 82:15-16). The primary question before the Court is whether Plaintiff has shown a substantial likelihood of success on judicial review, together with the remaining preliminary-injunction factors. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Plaintiff is likely to prevail on the merits and meets all the prongs for entry of a preliminary injunction for all three patients.

## II. Plaintiff's Showing of Likelihood of Success on the Merits Stands Unrebutted

Plaintiff met the requirements of the controlling LCD and provided medically necessary and reasonable treatment, and rendered the treatment in the good-faith belief that it was covered. See *In Home Health, LLC v. Kennedy*, 184 F.4th 499, 509 (6th Cir. 2026) (provider's reasonable interpretation of Medicare standards as covering a patient's claim is saved from liability by the safe harbor). It is undisputed that the QICs for J.F. and A.J. and the ALJ for S.T. found Plaintiff's medical records adequate, and the Secretary does not argue otherwise. The only arguments the Response raises are whether there were sufficient "medical studies" for J.F. and S.T., and, for A.J.—

despite the QIC's concession—whether the records were sufficiently detailed. *See* ECF No. 53 at 9, 10.

**A. Complying with the LCD makes the treatment reasonable and necessary.** The Response proceeds as though the "reasonable and necessary" standard of 42 U.S.C. § 1395y(a)(1)(A) floats free of the LCD. It does not. An LCD is, by statutory definition, a contractor's determination "respecting whether or not a particular item or service is covered…in accordance with section 1395y(a)(1)(A)"—that is, the Secretary's own contractor's articulation of when the item is reasonable and necessary. 42 U.S.C. § 1395ff(f)(2)(B). The LCD is the best guidance a practitioner has for determining CMS requirements. The Secretary's insistence that "the burden of establishing entitlement to Medicare payment always lies with the claimant who seeks the payment," ECF No. 53 at 7 (quoting *Almy*, 679 F.3d at 310), underscores the point: a claimant who bears the burden must be able to rely on the standard the Secretary's contractor has published. LCD L36377 states when skin substitute grafts (without ruling out different products or manufacturers) for diabetic foot ulcers and venous leg ulcers <u>are covered</u>, and the Government conceded on the record that it governs all three cases. (Tr. 30:23-31:1). That concession is the premise of the Court's supplemental-briefing order: pincites are paramount. (Tr. 69:14-16).

**B. The Court's paramount task was not paramount to the Secretary.** Plaintiff lined up the prongs; the Secretary lined up the ALJs. For J.F., the Supplemental Brief matches each LCD documentation requirement—failed conservative care greater than four weeks, wound measurements, comprehensive assessment, implemented treatment plan, product rationale, operative-note elements, and waste documentation—to pinpoint citations. ECF No. 47 at 4-9. The QIC conceded that the records document the baseline assessment, comprehensive evaluations, trialed conservative treatment, and the amount of product used, wasted, and how it was secured, (AR-1, 163-64), and the ALJ acknowledged that the sole basis for denial was the purported insufficiency of peer-reviewed literature. (AR-1, 21, 86-87).

For S.T., the Supplemental Brief does the same, ECF No. 47 at 9-15, including the prior clinicians' records showing the wound grew—three years of failed conservative care. (AR-2, 1017-1021, 1023, 1027). The ALJ himself found Dr. Brandwein's records "sufficient to overcome the other documentation issues" and instead denied the claim because the prior clinicians' records were allegedly "insufficient [against the] LCD [standard]" and the purported insufficiency of peer-reviewed literature. (AR-2, 51-52, 54-55).

For A.J., the Supplemental Brief matches every requirement, ECF No. 47 at 15-21, and despite the ALJ finding the Zenith product not experimental or investigational, (AR-3, 37), he denied the claims for insufficient documentation, (*id.*), while the QIC conceded the records supported medical necessity. (AR-3, 328). The Response engages none of this. What it offers instead fails on its own terms.

**1. The Secretary fails in arguing the LCD "does not control."** ECF No. 53 at 3-4. Whether an LCD "binds" an Article III court was never Plaintiff's argument. The Secretary conceded the 2019 LCD applies; the ALJs professed to apply it; and § 405.1062 obliged them to defer to it or explain a departure. The ALJs never did. None of the Response's authorities—*AseraCare*, *Bergman*, *Agendia*, *Porzecanski*—involves an adjudicator who claimed to apply a governing LCD while importing a requirement from a later proposal that never became effective.

**2. The MPIM detour fails.** ECF No. 53 at 4-7. The MPIM passages the ALJs recited govern "[i]n the absence of either an NCD or an LCD addressing" the item—the very "surplusage" this Court identified, which the Government did not defend as anything more. (Tr. 31:2-9). There is a controlling LCD here. *Family Foot & Leg Center* and *Foot v. Kennedy* applied MPIM criteria on their own administrative records; neither holds that an adjudicator may bypass a conceded, governing LCD. And the Secretary—while insisting review is confined to the certified record—supports the Response with a manual not relied upon by the QICs or the ALJs. ECF No. 53 at

4.[2]Even so, Plaintiff demonstrated medical consensus through medical studies and testimony of acceptance by CMS and testimony of use and reimbursement in hospitals and clinics alike. Dr. Merrill's expert testimony—that the records met the standard of care and allowed an independent practitioner to follow and concur in the treatment plan—stands uncontradicted. (AR-1, 1104:10-1105:5; AR-2, 1370:8-1372:11; AR-3, 2139:2-2140:3). And the treatment worked: the records document week-over-week wound closure and limbs saved. (AR-1, 708-721; AR-2, 1027-1047; AR-3, 1216, 1244). The Secretary continues to move the goalposts, even after conceding the governing standard.

**3. The journal-article arithmetic for J.F. and S.T.** ECF No. 53 at 8-10. Counting studies is the same peer-review standard in another guise. The Court already put the question:

> THE COURT: Why isn't one enough?...It's a new field. Peer-reviewed studies can't exist -- the doctor can't control whether the scientific community has saw fit within the first nine years of the existence of the grafts to review IMPAX…Why is the doctor held to that under the LCD?

(Tr. 34:4-16). The Government's answer circles back to "documentation," (Tr. 34:20-25)—but the documentation for J.F. and S.T. was conceded. The product-choice rationale is likewise in the record, pincited in the Supplemental Brief's tables, and unrebutted. ECF No. 47 at 7, 14, 19.

**4. The failure on A.J.** ECF No. 53 at 10-11. The Response repeats ALJ Alexander's complaints—no photographs, insufficient detail about application "technique," whether grafts were "folded" or needed "trimming." None of those items is an LCD requirement. The LCD's documentation and operative-note requirements are matched with record citations, ECF No. 47 at 17-21, and the Response does not contend otherwise. The Secretary cannot cite any requirement for photographs, define what is a sufficient amount of clinical information, or identify

[2] ("CMS Publication 100-04, at Chapter 30, § 30.2.3, explains that a claimant is expected to know how the "published medical literature" and the "consensus of expert medical opinion" (as those criteria are characterized in the manual) have assessed the product before the claimant bills Medicare for the product.")

where in the record the skin graft failed. Demanding documentation the LCD does not require is the same add-a-requirement legal error in different dress, and an ALJ's creation of an unstated legal requirement is arbitrary and capricious.

**5. "Each decision stands on its own."** ECF No. 53 at 7-8. Plaintiff does not argue that the three decisions are impermissibly inconsistent with one another, so *Hunter* is inapposite. Plaintiff's point is that each decision rests on the same legal error and ignores the record documentation. Repeating a wrong answer three times does not make it right.

## III. The Decisions Cannot Stand Under 42 U.S.C. § 405(g) and the LCD

42 U.S.C. § 405(g) review asks two questions, not one, and the Secretary's decisions fail both. The Court examines whether the decision (1) "is supported by substantial evidence" and (2) "whether the correct legal standards were applied." *Gulfcoast Med. Supply, Inc. v. Sec'y, Dep't of Health & Hum. Servs.*, 468 F.3d 1347, 1350 n.3 (11th Cir. 2006) (ECF No. 53 at 2). Deference runs to findings of fact alone: "no similar presumption of validity attaches to the [agency's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (legal principles reviewed *de novo*). And to the extent the Response supplies rationales the ALJs did not—the Claims Processing Manual—agency action is judged on the grounds the agency itself invoked; counsel's *post hoc* rationalizations cannot sustain it. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983).

### A. The ALJ decisions are not based on substantial evidence.

"Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Dr. Brandwein testified that the treatment was medically necessary and reasonable; Dr. Merrill independently reviewed the records and concurred in the medical necessity and reasonableness of the treatment. The Secretary offered no contrary medical opinion—no physician ever

opined the grafting was not medically necessary or reasonable.[3] Because Plaintiff's records demonstrate the procedures were medically reasonable and necessary and were supported by the documentation required, the ALJ decisions are "unsupported by substantial evidence in a case…reviewed on the record of an agency hearing provided by statute." 5 U.S.C. § 706(2)(E).

Rather than demonstrate where Plaintiff's records fail, the Secretary quotes the ALJs' conclusions regarding purportedly insufficient peer review or—despite the concession of adequate records—the "minimal" documentation or "paucity" of documentation in the medical records, the lack of photographs, or the discounting of Plaintiff's decision that the fish skin graft "did not work." ECF No. 53 at 9-11. For example, ALJ Preston conceded the failure of conservative treatment was "clear," then denied 75 claims because the prior clinicians' records documenting that failure were not granular enough—a requirement found in neither the LCD nor A57680. The Response's repeated refrain that "Plaintiff submitted medical studies to ALJ…," ECF No. 53 at 8-10, confirms the point: "medical studies" is another name for the peer-reviewed-literature requirement. The ALJs expected Plaintiff to prove something beyond the LCD. Indeed, the passages of the ALJ decisions the Response chooses to quote confirm, rather than rebut, Plaintiff's point. Each faults not the sufficiency of Dr. Brandwein's documentation, but the quantity and conclusions of published literature—or, for S.T., the records of other providers, and, for A.J., photographs and detail the LCD never asks for:

- J.F.: "The ALJ concluded, quite reasonably, that 'The study of a mere 10 wounds [treated with Impax] provides far too little data to support a conclusion that Impax is safe, effective, reasonable and necessary.' AR Vol. 1, p. 91." ECF No. 53 at 9.
- S.T.: "The authors themselves 'did not reach any conclusions' about the use of Impax. AR Vol. 2, p. 54. This is the only substantive study data in the entire hearing record that addresses the Impax product.

[3] The SE UPIC submitted a position paper for A.J. but did not appear at hearing. Under 42 C.F.R. § 405.1010 a participant's position paper is unsworn advocacy and no one from the UPIC rebutted factual statements made by Plaintiff.

AR Vol. 2, p. 54. This was negligible evidence in support of the safety and the effectiveness of this product. See AR Vol. 2, p. 56." ECF No. 53 at 10.

- A.J.: "The ALJ discussed at considerable length his finding that the documentation tended to include many general statements that were accompanied by no more than minimal 'objective information or measurements.' AR Vol. 3, p. 39. Nor were there any photographs to support the stated wound sizes or wound conditions, or to document the quantity of graft material used. AR Vol. 3, p. 39." ECF No. 53 at 11.

None of that addresses the LCD's documentation requirements the Court directed the parties to line up against the record. To the contrary, the QIC for A.J. found the records supported medical necessity, (AR-3, 328), and the ALJ for S.T. conceded that Dr. Brandwein's own records were sufficient, faulting only the granularity of the prior clinicians' records. *See* AR Vol. 2, p. 51:

> While Dr. Brandwein's [records] were sufficient to overcome the other documentation issues raised by the MAC and the QIC, I find that the limited records from the Beneficiary's prior clinicians are insufficient to meet the requirements of LCD L36377…proof of [failed conservative treatment].

(emphasis added). Because the ALJ decisions lack substantial evidence, Plaintiff should prevail on the Motion.

**B. The ALJs applied improper legal standards.**

Plaintiff's merits case is, at bottom, a case of legal error. "Failure to apply the correct law…mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). Whether the ALJ applied the correct legal standards is a question of law, which this Court reviews *de novo*. *Medenvios Healthcare, Inc. v. Becerra*, 725 F. Supp. 3d 1343, 1346 (S.D. Fla. 2024). The ALJs all applied the wrong standard.

The adjudicators denied these claims under a peer-reviewed-literature requirement that appears nowhere in the governing LCD, assigned their own values as to what was required for this purported peer review—"one phrase that does not appear anywhere in that LCD is peer-reviewed or clinical trials," a reading with which the Court agreed, (Tr. 20:8-11)—or added documentation steps the LCD does

not contain. The peer-review requirement first appeared in a proposed LCD that never took effect, (AR-3, 1815; Tr. 21:1-11), and retroactive application of a later standard is independently unlawful. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

The very regulation the Response invokes required the ALJs to give the governing LCD "substantial deference" and, if declining to follow it, to "explain the reasons why the policy was not followed." 42 C.F.R. § 405.1062(a)-(b); *see also In Home Health, LLC v. Kennedy*, 184 F.4th 499, 503 (6th Cir. 2026) ("contractors rely on Local Coverage Determinations (LCDs), which provide notice of how the contractor will determine whether an item or service satisfies the 'reasonable and necessary' [standard]."). No decision explains any departure, because each purported to apply the LCD while in fact applying a standard the LCD does not contain. Deference cannot insulate the application of the wrong legal standard, so the Response's pages of deference authority (ECF No. 53 at 2-3) are beside the point the Court framed: "this is a simple question of law as to what the LCDs require," after which "we line up the documents." (Tr. 32:19-21). The Secretary agreed. (Tr. 32:22-24) ("Correct, I don't [disagree]. No."). Plaintiff should prevail on its Motion.

## CONCLUSION

For the foregoing reasons and those set forth in ECF Nos. 26, 31, and 47, Plaintiff respectfully requests that the Court enter an order staying recoupment and Treasury offset of the disputed Medicare amounts at issue in this action pending the Court's judicial review and final judgment, and granting such further relief as the Court deems just and proper.

Dated: September 28, 2026.

**BLACK LAW P.A.**
*Attorneys for Plaintiff*
1401 East Broward Boulevard
Victoria Park Centre – Suite 304
Fort Lauderdale, Florida 33301

Telephone: (954) 320-6220

By: /s/ Patrick Wier

**KELSEY K. BLACK, ESQ.**
Florida Bar No.: 0078925
kb@blacklawpa.com
para@blacklawpa.com
**PATRICK WIER, ESQ.**
Florida Bar No.: 1029540
pw@blacklawpa.com
para@blacklawpa.com